UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Robert Harrison,

                        Plaintiff,         **Hon. Hugh B. Scott**

                                          10CV114A

                    v.

                                      **Report &**
                                      **Recommendation**

United States of America, et al.,

                        Defendants.

_____

Pending before the Court are the following motions: the United States' motion to partially substitute as a party on behalf of Dr. Dilipkumar J. Patel ("Dr. Patel")(Docket No. 24); the plaintiff's motion to amend the complaint and to join this action with Harrison v. United States, Civil No. 10CV236A (Docket Nos. 26, 31); and Dr. Patel's motion to have the United States fully substitute as a party on his behalf. (Docket No. 28).

**Background**

The plaintiff, Robert Harrison ("Harrison") commenced this action naming Dr. Patel, Dilipkumar J. Patel, M.D., P.C. (collectively as "Dr. Patel"), Jamison R. Ridgeley, M.D. ("Dr. Ridgeley"), Michael L. Vilardo, M.D. and Michael L. Vilardo, M.D. P.C. (collectively as Dr. Vilardo") as defendants. (Docket No. 3-2). The plaintiff's claims stem from treatment he received from these physicians on July 13, 2007 and September 25, 2007. The plaintiff alleges

1

that Dr. Patel performed an operation on July 13, 2007 described as a "left eye para plana vitrectomy, membrane stripping and endolaser of the left eye." (Docket No. 3-2 at ¶ 11). The plaintiff asserts that on September 25, 2007, Dr. Vilardo and Dr. Ridgeley performed an operation described as "ahmed valve placement of the left eye, focus intraocular lens left eye." (Docket No. 3-2 at ¶ 12). In both instances, the plaintiff asserts that the physicians were negligent causing him permanent damage.

The plaintiff also commenced a separate action against Eddie Skipper, M.D. ("Dr. Skipper")(Civil No. 10CV236A), in which the plaintiff asserts that Dr. Skipper was negligent in failing to heed symptoms and properly diagnose the condition in his left eye and to properly monitor his diabetes. (Civil No. 10CV236 at Docket No. 1, ¶¶ 5-7). Inasmuch as Dr. Skipper is an employee of the Department of Veterans Affairs ("the VA"), the United States substituted as a party for Dr. Skipper pursuant to 28 U.S.C. §2679(d)(2). (Civil No. 10CV236 at Docket No. 3).

In the instant action, the United States has already fully substituted as a party on behalf of Dr. Vilardo, who is also an employee of the VA. (Docket No. 1).[1] The United States has filed a motion to partially substitute as a party on behalf of Dr. Patel asserting that Dr. Patel was an employee acting within the scope of his employment in providing treatment to Harrison from July 13, 2007 through September 9, 2007, but that Dr. Patel was not acting within the scope of this duties as a VA employee when he provided treatment to Harrison between September 10, 2007 and December 10, 2007. Thus, the United States seeks to be substituted as a party for Dr. Patel only for the conduct of Dr. Patel between July 13, 2007 and September 9, 2007. (Docket

---

[1] The docket does not reflect that Dr. Ridgeley has been served with a summons and complaint in this matter. The Court notes that the proposed Amended Complaint (Docket No. 35) does not name Dr. Ridgeley as a party.

2

No. 25 at page 4).

**Motion to Substitute**

It is undisputed that direct actions against federal employees alleging injury from negligence are not permitted. Instead, the Federal Tort Claims Act, 28 U.S.C. §2679, provides that an action against the United States "for injury or loss of property ... arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages ... Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred." 28 U.S.C. §2679(b)(1). In accordance with 28 U.S.C. §2679(d)(1):

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Thus, if a federal employee is certified by the Attorney General as having acted within the scope of his employment with respect to the conduct underlying the claims, the United States must be substituted as the proper defendant. 28 U.S.C. § 2679(d)(1). However:

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references

3

> thereto, and the United States shall be substituted as the party
> defendant.

28 U.S.C. § 2679(d)(3).

In the instant case, the Attorney General[2] has certified that Dr. Patel was acting within the scope of his VA duties during the period from the surgery on July 13, 2007 through September 9, 2007. (Docket No. 25 at page 4). The Attorney General has declined to certify that Dr. Patel was acting within the scope of his VA duties when Dr. Patel treated Harrison on or after September 10, 2007. According to the Declaration of Dr. Miguel Rainstein, the Chief of Staff of the VA's Western New York Healthcare System ("Buffalo VA"), Dr. Patel maintains a private practice of ophthalmology in Western New York. (Docket No. 34 at ¶ 5). Dr. Rainstein states that Dr. Patel is a part-time VA employee, spending 20% of his schedule (one day per week) at the VA. (Docket No. 34 at ¶¶ 25-26). According to Dr. Rainstein, in his role as a part-time VA employee, Dr. Patel only sees patients at the Buffalo VA, he does not see VA patients in his private office; and he makes notes in the VA chart for the patient. (Docket No. 34 at ¶¶ 28-29). Dr. Rainstein asserts that the VA has a system in which providers who are not employed by the VA are authorized to provide non-VA consults to VA patients, and that if a non-VA consult is authorized the patient will be able to see a private physician who will be paid for the service by the VA.. (Docket No. 34 at ¶¶ 6-7). During a non-VA consult, the physician sees the patient in the physician's private office and keeps his own chart or medical records for the treatment. The physician then bills the VA for the treatment on a fee for service basis. (Docket No. 34 at ¶ 9). In

---

[2] The United States asserts that pursuant to 28 C.F.R. §15.2(a), the Attorney General delegated his authority to certify that a federal employee was acting withing the scope of his or her officer or employment to the United States Attorney for the district in which the action or proceeding is brought. (Docket No. 25 at page 4). Dr. Patel does not dispute this assertion.

this case, on September 10, 2007, Dr. Cheryl Forell-Tomasulo, a VA physician, made a note requesting that a non-VA retinal specialist evaluate the plaintiff. Dr. Forell-Tomasulo's notes stated that Harrison "needs surgery within the next two weeks. No retinal surgeon available at this hospital; will need to fee base out." (Docket No. 34, Exhibit A). On September 11, 2007, a note was entered in Harrison's VA chart indicating that a non-VA consult was authorized for the period between September 10, 2007 and December 10, 2007. (Docket No. 34, Exhibit B). The VA chart note stated that the plaintiff was "eligible for VA payment for 3 outpatient retinal visits, includes: 1 consult office visit, 1 retinal surgery visit with sedation and 1 follow up office visit with Dr. Dilip Patel between September 10, 2007 and December 10, 2007 as referred by Dr. Forell-Tomasulo for DX of retinal detachment and diabetic retinopathy." (Docket No. 34 at Exhibit B). Dr. Rainstein states that under such a referral, Dr. Patel was to "see the patient in his private office, render care, and bill the VA." (Docket No. 34 at ¶ 16). Dr. Rainstein notes that there are no notes in the VA chart for Harrison relating to the treatment provided by Dr. Patel to the plaintiff in September of 2007; the VA did not direct or control the nature of the treatment provided to the plaintiff by Dr. Patel during these visits; the visits took place in Dr. Patel's private office; Dr. Patel supplied the instrumentalities used for the treatment; and that Dr. Patel was not supervised by the federal government with respect to the treatment he provided to Harrison in September of 2007. (Docket No. 34 at ¶¶16-21). Further, Dr. Rainstein states that he has reviewed Dr. Patel's private notes with respect to the treatment he provided to Harrison in September of 2007, which reflect that the plaintiff was a patient referred by the "VA Hospital", that his insurance was the "VA Hospital." (Docket No. 34 at ¶¶ 23-24).

Dr. Patel does not dispute that he is a part-time Va employee and that he maintains a private practice. Dr. Patel states that as a retinal specialist he is "from time to time required to

5

see VA patients outside of the hospital on an urgent or emergency basis." (Docket No. 28-8 at ¶ 4). Dr. Rainstein disputes that Dr. Patel is "required" to see patients outside of the VA hospital on an emergency basis, and that when such referrals are made, if Dr. Patel was not available, the referral would be made to another retinal specialist. (Docket No. 34 at ¶ 33). Dr. Patel states that when he treats a "VA patient" outside of the hospital, he considers them to be "VA patients" and not patients of his private practice. (Docket No. 28-8 at ¶ 6). Dr. Patel acknowledges that separate and apart from the flat rate salary he is paid for his work at the VA Hospital, he bills the VA for the treatment of such patients on a fee for service basis. (Docket No. 28-8 at ¶ 6). Dr. Patel does not dispute that he saw the plaintiff on September 19, 2007 and on September 20, 2007 in his private office based upon the referral from the VA Hospital. (Docket No. 28-1 at ¶¶ 9 -11). Dr. Patel states that after evaluating Harrison in September of 2007, he determined that "the proposed surgery was not advisable at that time and that alternative surgeries needed to be explored" and that Harrison "then returned to the VA Hospital ophthalmology clinic for further care." (Docket No. 28-1 at ¶10). He asserts, however, that at all times Harrison was a "VA patient" and that the treatment he provided was within the discretion and control of the VA Hospital. (Docket No. 28-8 at ¶ 6).

Whether Dr. Patel was acting within the scope of his part-time employment at the VA Hospital or was an independent contractor when he treated Harrison in September of 2007 is a question of federal law governed by the "strict control test." The strict control test requires consideration of whether the United States has the authority "to control the detailed performance of the contract." Leone v. United States, 910 F.2d 46, 49 (citation omitted); see also, Logue v. United States, 412 U.S. 521, 527 (1973) ("[T]he distinction between the servant or agent relationship and that of independent contractor turn[s] on the absence of authority in the principal

6

to control the physical conduct of the contractor in performance of the contract."). Pursuant to Leone, the Court must also consider the other principles of agency:

> in determining whether one acting for another is an employee or independent contractor, the following relevant factors are to be considered: the extent of control which, by agreement, the master may exercise over the details of the work; whether or not the one employed is engaged in a distinct occupation or business; the kind of occupation, with reference to whether the work is usually done under the direction of the employer or by a specialist without supervision; the skill required in the particular occupation; whether the employer or the workman supplies the instrumentalities, tools and the place of work; and the method of payment, whether by time or by the job.

Leone, 910 F.2d. at 50.

In Leone, the Second Circuit held that private physicians designated by the Federal Aviation Administration as aviation medical examiners ("AME") were not government employees for purposes of the FTCA, and thus, the United States was not liable for physicians' failure to discover pilot's heart disease. Applying the above principles, the Second Circuit held:

> The FAA, as discussed above, does not maintain control over the detailed physical performance of the AMEs. The individuals who serve as AMEs are professionally qualified physicians; most maintain their own private medical practices or are affiliated with hospitals. Each AME is free to examine as few or as many applicants as he desires. The AMEs obviously are specialists, who usually work without supervision. The performance of their duties clearly requires special skill and training. To that end, AMEs are responsible for being informed as to the progress of aviation medicine, Order 8520.2C, para. 9(a)(3)(a), and necessarily rely on their own professional judgment in making certification decisions. Each AME also must supply the instrumentalities, tools and the place of work. Additionally, each AME sets his own fee and is paid directly by the applicant. Also instructive is the fact that the FAA provides no insurance and does not pay workers' compensation or social security taxes for the AMEs.

Leone, 910 F.2d. at 50.

This issue of whether a medical provider was an independent contractor or a federal employee was also addressed in Grace v. United States, --- F.Supp.2d ----, 2010 WL 4451818 (W.D.N.Y. 2010)(Siragusa, J.). In Grace, an ophthalmologist, Dr. Shobha Boghani ("Boghani"), who worked primarily for the University of Rochester, also worked at a VA hospital six days a month pursuant to a contract between the VA and the University of Rochester Department of Ophthalmology. The contract specified that the services provided under the contract were rendered by providers as independent contractors. Grace, 2010 WL 4451818 at * 1. The contract specified the clinic hours; that certain diagnostic procedures which the VA was not equipped to provide would be performed at the University; that the physicians would utilize the VA's medical records system; the physicians would adhere to the VA's customer service standards, policies, procedures and regulations; and that the VA medical director retained the right to review the qualifications of the physicians. Grace, 2010 WL 4451818 at * 2. Under the contractual agreement in Grace, the VA clerical staff scheduled appointments for the physicians to see patients at the VA clinic; the VA provided the physician with a list of patients to be seen each day; the VA was required to see any VA patients who needed ophthalmology services. However, there were no specific policies concerning opthalmology treatments, and no supervising physician at the VA who exercised "control over the day-to-day performance of the physician's opthalmological work. Grace, 2010 WL 4451818 at * 2. Applying the strict control test, and other principles of agency, the Court in Grace determined that the strict control test is not satisfied merely because a doctor provides medical services pursuant to detailed federal guidelines. Grace, 2010 WL 4451818 at * 9. The Court reasoned:

> Applying the applicable principles of law to the facts of this case, the Court finds that Boghani and the U of R were independent contractors. First, the Court finds that under the strict control test,

8

> the United States did not control Boghani's day-to-day activities at the VA clinic. It is true that the VA directed when and where the physician would work, scheduled her appointments, and provided general guidelines for her to follow in performing her work. Boghani was required to see all VA patients who presented themselves for ophthalmology treatment, and to use the VA's medical record system. Boghani also used the VA's basic medical equipment, unless more specialized equipment was needed, in which case she used equipment at the U or R. However, no one at the VA supervised Boghani's work on a day-to-day basis. For example, while Sharma [the lead physician at the VA clinic] provided general supervision of doctors at the VA clinics, she had very little interaction with Boghani, since she never received any complaints about Boghani, since she was not familiar with Boghani's specialty, and since quality control of the Boghani's work was performed by the U of R. On these facts, the Court finds that the VA exercised less control over Boghani's work than the FAA exercised over the doctors in the Leone case, who were held to be independent contractors.

Grace, 2010 WL 4451818 at * 9. The Court in Grace further held that applying the general principles of agency renders the same result:

> General principles of agency also indicate that Boghani was an independent contractor. The VA did not exercise control over the details of Plaintiff's work, nor could it, since Plaintiff's VA supervisors were not familiar with opthalmology. Boghani was engaged in a distinct, highly-skilled and specialized occupation, opthalmology, which she performed without day-to-day supervision by VA officials. Additionally, Boghani's pay and benefits were provided by the U or R. All of these factors indicate that Boghani was an independent contractor. While the fact that the VA provided the place of work, as well as tools, for the most part, weighs in favor of finding that Boghani was the VA's agent, consideration of all relevant factors leads the Court to conclude that Boghani was an independent contractor.

Grace, 2010 WL 4451818 at * 10.

In the instant case, the record reflects that the VA exercised less control with respect to Dr. Patel's treatment of Harrison in September of 2007 than found under the facts of Grace or Leone. Dr. patel has not demonstrated that the VA exercised any meaningful control with

9

respect to his treatment of Harrison in September of 2007. The fact that Harrison was referred to Dr. Patel to be seen as a consulting physician in the doctor's private office, does not support a conclusion that the VA exercised control with respect to Dr. Patel's treatment of the plaintiff on those occasions. Similarly, the fact that Dr. Patel was a part-time employee of the VA does not support a conclusion that he was acting within the scope of his employment at the VA when he treated a patient in his private practice who also happened to be a VA patient. The undisputed facts in this case reflect that Dr. Patel treated Harrison in September of 2007 as part of Dr. Patel's private practice; the appointments took place in Dr. Patel's private office; Dr. Patel used his own instrumentalities; Dr. Patel made his own medical notes regarding the treatment; these medical notes were not entered into the VA medical records system; there was no supervision by the VA of Dr. Patel with respect to these appointments; and Dr. Patel was paid on a fee for service basis. Dr. Patel relies upon Tivoli v. United States, 1996 WL 1056005 (S.D.N.Y. 1996), which held that radiologists utilized by the National Institute of Health ("NIH") pursuant to a contract between the NIH and Georgetown University were government employees for purposes of the FTCA. In Trivoli, the Court specifically held that the government controlled the work of the radiologists' day to day activities, among other reasons, because the "contract also set forth the actual hours during which the radiologists were to be available to staff the NIH Radiology Department ..., and set forth that the NIH was to provide all of the equipment, supplies, medication and facilities that were needed to provide the radiology services under the contract." Tivoli, 1996 WL 1056005 at *3-4.("The day to day activities of the physicians in issue here were under the control, direction and supervision of the Government."). Thus, Tivoli is factually distinguished from the case at hand.

Under the facts and circumstances in this case, Dr. Patel was not acting within the scope

of his part-time employment with the VA when he treated Harrison in his private practice pursuant to a referral in September of 2007. Therefore, the motion by the United States to substitute as a party for Dr. Patel based upon Dr. Patel's treatment of Harrison from July 13, 2007 to September 9, 2007 should be granted, and the plaintiff's claims should be dismissed as against Dr. Patel for that specified time period. Dr. Patel's motion to compel the United States to substitute as a party for him with respect to Dr. Patel's treatment of Harrison from September 10, 2007 to December 10. 2007 should be denied.

**Motion to Amend and Consolidate**

The plaintiff seeks to amend the complaint to include a claim relating to the plaintiff's treatment by the defendants for his diabetes, in addition to the claim relating to the treatment he received relating to his eye. (Docket No. 31-1 at ¶ 7-8). The claim appears to relate to his treatment for his diabetes by Dr. Skipper, who has already been substituted by the United States in this case. The United States has represented that it has no objection to the proposed amendment. (Docket No. 32 at page 1). The motion to amend the complaint should be granted.

The plaintiff also seeks to consolidate this action with the separate action commenced against Dr. Skipper (Civil No. 10CV236). Again, the United States has represented that it has no objection to the proposed consolidation. (Docket No. 32 at page 1).[3]

Rule 42(a) of the Federal Rules of Civil Procedure grants a trial judge broad discretion to determine whether to consolidate two actions to "avoid unnecessary costs or delay." Johnson v.

---

[3] Dr. Patel is also represented by independent counsel to the extent he has not been substituted by the United States. Dr. Patel's independent counsel has not filed a response to the plaintiff's motions to amend and consolidate.

Celotex, 899 F.2d 1281, 1284 (2d Cir.1990). A judge must balance the gains in judicial efficiency with any threats of prejudice and confusion to determine the most efficient method of disposition that preserves access to a fair and impartial trial. Id. at 1284-85. The burden is on the moving party to prove that consolidation is warranted. See Solvent Chem. Co. v. E.I. Dupont De Nemours & Co., 242 F.Supp.2d 196, 221 (W.D.N.Y.2002). The movant must prove that the two actions are based on common questions of law or fact and that considerations of efficiency outweigh any prejudice or confusion that might result from consolidation. See Johnson, 899 F.2d at 1284-85 (citations omitted).

The action involving the treatment provided by Dr. Skipper relates to the failure to recognize and treat symptoms and conditions effecting Harrison's left eye. The action involving the treatment provided by Dr. Patel and Dr. Vilardo relates to the surgery and treatment of Harrison's left eye. Inasmuch as the there is a common factual nexus with respect to the two actions, and no party has articulated any prejudice resulting from the common trial of the asserted claims, it appears that the judicial efficiency gained from the joinder outweighs any possible confusion resulting from the consolidation. It is recommended that the two actions be consolidated for a single trial.

**Conclusion**

Based on the above, it is recommended that the United States' motion to partially substitute as a party on behalf of Dr. Patel (Docket No. 24) be granted; that the plaintiff's motion to amend the complaint and to join this action with Harrison v. United States., Civil No. 10CV236A (Docket Nos. 26, 31) be granted; and that Dr. Patel's motion to have the United States fully substitute as a party on his behalf. (Docket No. 28) be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may**

**result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
May 16, 2011